UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

CASHELLA I. BENJAMIN,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

Case No. 15-cv-02995-NJV

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

Docs. 21, 24.

## INTRODUCTION

Plaintiff Cashella I. Benjamin seeks judicial review of an administrative law judge ("ALJ") decision denying her application for supplemental security income under Title XVI of the Social Security Act. Plaintiff's request for review of the Administrative Law Judge's ("ALJ's") unfavorable decision was granted by the Appeals Council. The Appeals Council made new findings and then issued its decision finding that Plaintiff was not disabled. The decision is the "final decision" of the Commissioner of Social Security, which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge. (Docs. 10 & 13.) The court therefore may decide the parties' cross-motions for summary judgment. For the reasons stated below, the court will deny Plaintiff's motion for summary judgment, and will grant Defendant's motion for summary judgment.

## LEGAL STANDARDS

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal

error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**PROCEDURAL HISTORY**

Plaintiff applied for supplemental security income under Title XVI of the Social Security Act (Act), on September 7, 2011. (AR 314-22.) The agency denied Plaintiff's application initially and on reconsideration. (AR 112-53.) Plaintiff, accompanied by her attorney, testified at a hearing before an ALJ. (AR 57-93.) On November 12, 2013, the ALJ issued a hearing decision, concluding that Plaintiff was not disabled. (AR 40-50.) On March 20, 2015, the Appeals Council notified Plaintiff that it granted her request for review. (AR 12.) On April 15, 2015, Plaintiff requested an additional 30 days to submit evidence. (AR 18.) The Appeals Council issued its final decision on April 20, 2015. (AR 12-15.) The Appeals Council adopted the ALJ's findings at Step 1 through Step 3, the RFC finding and the credibility determination. (AR 12-13.) The Appeals Council made new findings at Step 4, and ultimately found that Plaintiff was not disabled. (AR 13-15.) On April 30, 2015, the Appeals Council sent Plaintiff's counsel a letter through facsimile machine stating that Plaintiff could send new information within 25 days. (AR 2.) Plaintiff's counsel appears to have faxed the Appeals Council documents on June 3, 2015. (AR 860-68.)

**THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or

2

more months. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909. The ALJ must consider all evidence in the claimant's case record to determine disability (Id. § 416.920(a)(3)), and must use a five-step sequential evaluation to determine whether the claimant is disabled (Id. § 416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

Here, both the ALJ and the Appeals Council evaluated Plaintiff's application for benefits under the required five-step sequential evaluation. (AR 12-14; 40-50.)

At Step One, the claimant bears the burden of showing she has not been engaged in "substantial gainful activity" since the alleged date the claimant became disabled. 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *Id*. The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (AR. 42.) The Appeals Council adopted that finding. (AR 12.)

At Step Two, the claimant bears the burden of showing that she has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). The ALJ found that Plaintiff suffered the following severe impairments: status post carpal tunnel release of the left nondominant upper extremity; cutaneous lupus; and obesity. (AR. 42.) The Appeals Council adopted the ALJ's finding. (AR. 12.)

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. See 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the burden of showing her impairments meet or equal an impairment in the listing. *Id*. If the claimant is successful, a disability is presumed and benefits are awarded. *Id*. If the claimant is unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four. *Id*. § 416.920(a)(4)(iv), (e). Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed

3

impairments. (AR 45.) The Appeals Council adopted the ALJ's finding. (AR 12). Next, the ALJ determined that Plaintiff retained the RFC "to perform light work as defined in 20 CFR 416.967(b) except she can stand and/or walk for 4 hours in an 8-hour workday; sit without limitation; can lift and/or carry 10 pounds frequently and 20 pounds occasionally; frequently climb ramps/stairs and balance; occasionally stoop, kneel crouch, and crawl; can frequently reach, handle and finger; can occasionally feel with the left non-dominant upper extremity; and must avoid working around heights and heavy machinery." (AR 45.) The Appeals Council adopted this finding. (AR 14.)

At Step Four, the ALJ determined that Plaintiff was capable of performing past relevant work. (AR 49.) The Appeals Council, however, rejected this determination and found that Plaintiff was unable to perform past relevant work. (AR 14.)

At Step Five, after considering the Plaintiff's age, education, work experience, and RFC, the Appeal Council determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (AR 15.) Accordingly, the Appeals Council found that Plaintiff had "not been under a disability, as defined in the Social Security Act," through the relevant time period. (AR 15.)

## DISCUSSION

### Step Three: Listing 12.06 Anxiety Related Disorders

Plaintiff contends that the ALJ erred in concluding that Plaintiff did not meet or equal listing 12.06, anxiety related disorders, in Step Three of the five step sequential analysis. Plaintiff argues specifically that "she meets or equals the requirements of 12.06, Anxiety Disorder because the evidence fulfills the requirements of A.1a, 1.c, or 3 and B.4 -- Repeated episodes of decompensation."

Listing 12.06 A and B criteria require the following:

A. Medically documented findings of at least one of the following:

    1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:

        a. Motor tension; or
        b. Autonomic hyperactivity; or

4

        c. Apprehensive expectation; or
        d. Vigilance and scanning;

    or

2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or
4. Recurrent obsessions or compulsions which are a source of marked distress; or
5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

    AND

B. Resulting in at least two of the following:
    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration.

**A**t Step Two, the ALJ determined that Plaintiff's "medically determinable mental impairments of depressive disorder and anxiety disorder do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefor[e] nonsevere." (AR 42.) The ALJ analyzed the paragraph B criteria in detail, discussing the evidence he reviewed as to each. (AR 42-43.) The ALJ concluded that Plaintiff had no limitation of activities of daily living, mild limitation in the area of social functioning, mild limitation in the area of maintaining concentration, persistence or pace, and no episodes of decompensation that have been of extended duration. (AR 43.) The ALJ accorded little weight to the opinion of Ellen Vargas, LCSW, because it was not consistent with the underlying treatment notes of the physicians. (AR 43.)

The ALJ also reviewed the medical evidence and concluded that there was no longitudinal evidence of a continuous 12-month period of more than minimal symptoms and that on medications Plaintiff's symptoms were controlled. (AR 44.) *See* 20 C.F.R. § 416.909. Plaintiff reported that she started experiencing depression and anxiety symptoms in November or December 2010. (AR 692.) In August 2011, a mental examination was within normal limits except that Plaintiff appeared mildly depressed and anxious. (AR 500.) By October 12, 2011, she

5

reported that her medication was effective in eliminating her panic attacks, but that she was discontinuing it because she was pregnant. (AR 692.) She did not again seek mental health treatment until April 2013. (AR 674.) Ms. Vargas noted at that time that Plaintiff's mood was "incongruent" to her reported symptoms of extremely difficult functioning, and poorly controlled depression and anxiety. (AR 674-75.) In September 2013, Plaintiff reported that her anxiety and depression symptoms were "coming back," and she was prescribed medication. (AR 867, 868.) On November 6, 2013, Dr. Liles adjusted her medication and opined that her symptoms would improve in nine months. (AR 863.)

Therefore there was substantial evidence to support the ALJ's finding that Plaintiff did not satisfy the durational requirement for her impairment to be considered severe. She experienced symptoms beginning in November 2010, but, by October 2011, medication alleviated those symptoms. (AR 692.) Similarly, the evidence documents that she experienced symptoms again on or about September 23, 2013, and Dr. Liles opined that her issues would resolve by August 6, 2014. (AR 865, 863.) Neither of those periods were long enough for her impairments to be considered severe. *See Guardado v. Astrue*, 508 F. App'x 650, 651 (9th Cir. 2013) (unpublished) (ALJ validly determined that claimant "did not establish a severe impairment or combination of impairments present for at least twelve months"). Moreover, even if the ALJ erred at Step 2, such error is harmless because she considered Plaintiff's mental impairments later in the sequential analysis (AR 45, 46). *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("Even assuming that the ALJ erred in neglecting to list the [an impairment] at Step 2, any error was harmless" because the ALJ discussed the impairment later in the sequential analysis, and any limitations caused by the bursitis were addressed in the RFC finding).

Plaintiff argues that she meets the requirements of the fourth functional area of paragraph B based on the evidence of all her visits to the ER, doctors' visits, and medication. However, this argument addresses only one of the paragraph B criteria. The regulation clearly requires the claimant to meet two paragraph B criteria. Thus, even if the court were two assume, arguendo, that the ALJ erred in finding that there were no episodes of decompensation that were of extended duration, Plaintiff would not satisfy Listing 12.06.

6

The court finds, therefore, no error in the ALJ's determination that Plaintiff's medically determinable mental impairments of depressive disorder and anxiety disorder were not severe impairments for the purposes of the five step analysis.

**Step Three: the RFC Finding**

The RFC is the most a claimant can still do despite her limitations, and is "based on all the relevant evidence in [her] case record." *See* 20 C.F.R. § 416.945(a). Determination of a claimant's RFC is not a medical opinion, but a legal decision that is expressly reserved to the Commissioner through her delegate, the ALJ. *See* 20 C.F.R. §§ 416.927(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). An ALJ may exclude properly rejected limitations from the RFC. *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (in determining RFC, ALJ is not required to incorporate the claimant's properly rejected statements and testimony). In this case the ALJ found that Plaintiff was capable of performing light work as defined in 20 C.F.R. 416.967(b) except (i) she could stand or walk for four hours in an eight-hour work day; (ii) could sit without limitations; could lift or carry 10 pounds frequently and 20 pounds occasionally; and (iv) had other limitations. (AR 45.) Plaintiff contends that the ALJ erred in making this RFC determination.

Plaintiff alleges that the ALJ rejected a treating source medical opinion. However, no physician opined that Plaintiff had a functional limitation based on a medical condition. On August 20, 2011, Plaintiff first presented to Dr. Schlitz of the Schulman-Liles Clinic for medication Management. (AR 498.) She appeared mildly depressed and anxious. (AR 500.) She was diagnosed with generalized anxiety disorder and major depressive disorder, single episode, and Dr. Schlitz prescribed her medication. (AR 501.) She was instructed to follow up in two weeks. (AR 502.) No other treating notes from a psychiatrist were before the ALJ or the Appeals Council. Later evidence shows that Plaintiff presented to Erin Griffiths, D.O., on September 23, 2013. (AR 865.) Her affect was restricted but her speech, attention, orientation were within normal limits. (AR 867.) She was not taking medication. (AR 866.) She was prescribed medication. (AR 868.) Six weeks later, Dr. Liles adjusted her medication and opined that her

7

symptoms would resolve in nine months. (AR 863.)

The mere fact that three different psychiatrists treated Plaintiff once and prescribed her medication does not mean that those three psychiatrists opined that she had functional limitations. Plaintiff argues at one point that the "limitations resulting from the diagnoses [of the psychiatrists] were not included in the VE hypotheticals by the ALJ and the AC." Plaintiff's Motion for Summary Judgment at 14. But diagnosis of an impairment does not mean that the impairment is severe or causes workplace limitations. *See Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999) ("Although the appellant clearly does suffer from diabetes, high blood pressure, and arthritis, there is no evidence to support his claim that those impairments are 'severe.'"); *see also Bray v. Astrue*, 554 F.3d 1219, 1228-29 (9th Cir. 2009) ("no authority to support the proposition that a severe mental impairment must correspond to limitations on a claimant's ability to perform basic work activities"). Diagnoses are not equivalent to opinions that Plaintiff was impaired. There was no "medical opinion" that was rejected by the ALJ or Appeals Council.

Plaintiff's challenge to the physical portion of the RFC finding is undeveloped. Plaintiff simply argues that the fact that she has lupus and carpal tunnel syndrome requires a finding that she is disabled. Plaintiff's Motion for Summary Judgment at 8, 9, 14, 15. Plaintiff has the burden of establishing her RFC, and she fails to articulate how her lupus and carpal tunnel syndrome caused greater limitation than those contained in the ALJ's RFC finding. *See Hibbs v. Department of Human Resources*, 273 F.3d 844, 873 n.34 (9th Cir. 2001) (finding argument too undeveloped to be capable of assessment).

Further, the medical record supports the ALJ's RFC finding. Dr. Lewis, the consultative examiner, opined that Plaintiff could stand or walk up to four hours a day because of fatigue secondary to her lupus; sit without limitations; lift and carry 10 pounds frequently and 20 pounds occasionally. (AR 532.) The ALJ relied on this opinion in determining the RFC. (AR 47.) In fact, the ALJ noted that "the record does not contain any opinion from treating or examining physicians indicating that" Plaintiff had more limitations than those found in the RFC. (AR 49.) *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant). The two medical consultants reviewed Plaintiff's records and opined that she had fewer

8

restrictions than those found in the RFC. (AR 120-21, 134-35.) *See* 20 C.F.R. § 416.927(e)(2)(i) ("State agency medical and psychological consultants ... are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation"); Social Security Ruling (SSR) 96 -6p, 1996 WL 374180 (July 2, 1996) (same); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("[t] he opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record").

Moreover, Plaintiff's own treating sources made statements on the record indicating that they did not believe that she had significant functional limitations. One treating source described her as an "essentially healthy female [with] drug seeking behavior," and reported that she was applying for SSI "despite [the] fact she isn't disabled." (AR 678.) Once, after a treating source filled out a form indicating that she had "no functional limitation," Plaintiff returned to the clinic with her mother, who made veiled threats against the clinic. (AR 677.) Contrary to Plaintiff's bare assertions to the contrary, the medical opinion evidence firmly supports the ALJ's RFC finding.

Furthermore, Plaintiff offers no support for her assertion that the ALJ could not determine her RFC because her surgery happened five months before the ALJ 's decision. Plaintiff's Motion for Summary Judgment at 8. In January 2012, Dr. Cheung diagnosed Plaintiff with possible bilateral carpal tunnel syndrome in 2012 and a nerve conduction study confirmed the diagnosis. (AR 804, 808.) She underwent carpal tunnel release surgery on the left arm in July 2013. (AR 832.) She began a course of physical therapy, and therapy decreased her pain. (AR 853.) There is no indication that the surgery was unsuccessful or that Plaintiff would not recover.

Finally, the ALJ found that although Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms she alleged, her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained" in the decision. (AR 46.) The ALJ properly discounted Plaintiff's credibility because of her inconsistent testimony. *See* 20 C.F.R. § 416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence ...."); *Verduzco*, 188 F.3d at 1090 ("The ALJ

pointed out several areas in which the appellant's testimony or behavior was inconsistent with his own statements"). For example, Plaintiff testified that her depression was so extreme that she stayed home and did not even take her 18-month old daughter to the park. (AR 79.) She also told Dr. Lewis that she spent all day lying down. (AR 530.) However, Plaintiff also testified that her 18-month old daughter had cerebral palsy, and she took her to physical and occupational therapy. (AR 81-82.) Plaintiff's ability to care for a child with cerebral palsy and take her to numerous medical appointments is inconsistent with an inability to leave the home or a need to lie down all day.

The ALJ also properly discounted Plaintiff's credibility because there was evidence that she exaggerated her symptoms. (AR 49.) *See Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (ALJ properly pointed to affirmative evidence of malingering). As noted above, one treating source described her as an "essentially healthy female [with] drug seeking behavior." (AR 678.) Ms. Vargas noted that Plaintiff's affect was "incongruent to [her] reported mood [symptoms]." (AR 674.) The court finds that the ALJ's assessment of Plaintiff's testimony is based on the relevant evidence in the record and the ALJ's decision satisfies the substantial evidence standard.

**New Evidence**

On March 20, 2015, the Appeals Council notified Plaintiff that it granted her request for review. (AR 12.) On April 15, 2015, Plaintiff requested an additional 30 days to submit evidence (AR 18.) The Appeals Council issued its final decision on April 20, 2015. (AR 12-15.) On April 30, 2015, the Appeals Council sent Plaintiff's counsel a letter through facsimile machine that Plaintiff could send new information within 25 days. (AR 2.). Plaintiff's counsel appears to have faxed the Appeals Council documents on June 3, 2015, nine days after the deadline set by the Appeals Council. (AR. 860-68.) The Appeals Council took no further action.

The Ninth Circuit has held "that when a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence." *Brewes v. Comm'r of Soc. Sec.*, 682 F.3d 1157 1159-60, 1162-63 (9th Cir. 2012) (adopting *Ramirez v. Shalala*, 8 F.3d

10

1449, 1451-52 (9th Cir. 1993)).  In *Brewes*, the Court declined to apply the good cause and materiality requirements outlined in 42 U.S.C. § 405(g) (sentence six) to the new evidence submitted to the Appeals Council; instead, the Court applied the substantial evidence standard that governs judicial review of the Commissioner's findings of fact.  *Id.* at 1161-63; *but see Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001) (holding that to "justify a remand," claimant "must show that [the evidence submitted to the Appeals Council] is material to determining her disability, and that she had good cause for having failed to produce that evidence earlier"). The evidence sent on June 3, 2015, is not properly before this court because the Appeals Council did not review it, making *Brewes* inapplicable.  Assuming, *arguendo*, that *Brewes* does apply, substantial evidence continues to support the ALJ's decision.  Plaintiff was prescribed new medication until September 2013, and she had normal thought process orientation, and attention (AR 867, 868.)  She stated that she was sad and lonely, had crying spells, and wanted medication to take the "edge" off her stress.  (AR 867.)  In November 2013, Dr. Liles opined that with treatment her issues would resolve within nine months.  (AR 863.)  Thus Plaintiff's nightly panic attacks, which started after September 23, 2013, were not expected to last 12 months and did not satisfy the durational requirement.  *See* 20 C.F.R. § 416.909.  Therefore, under *Brewes*, remand is unwarranted because substantial evidence continues to support the ALJ's decision. Furthermore, the evidence does not satisfy the new and material standard of sentence six of 42 U.S.C. 405(g) because evidence of a condition that does not meet the durational requirement cannot be considered material, *i.e*. there is no "'reasonable possibility' that the new evidence would have changed the outcome of the administrative hearing."  *Mayes*, 276 F.3d at 462.

**Step five Analysis – Jobs in the National Economy**

Plaintiff raises two challenges to the Appeals Council's Step 5 analysis: (1) the hypothetical posed to the vocational expert did not include all of her limitations, and (2) the Appeals Council failed to account for her non-exertional limitations caused by her mental impairments.  Plaintiff does not argue that the hypothetical posed to the VE did not include all the limitations found in the RFC, but argues that because the ALJ did not include certain limitations in the RFC, the Step 5 analysis is flawed.  Because, as discussed above, the substantial evidence supported the ALJ 's RFC finding, the hypothetical posed to the VE properly encompassed all of

11

Plaintiff's limitations. *Thomas*, 278 F.3d at 956 ("In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental, supported by the record"); *Osnabruck v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001) ("It is, however, proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record"). Similarly, because the ALJ properly found that Plaintiff 's mental impairments did not cause any non-exertional limitation, the Appeals Council committed no error by excluding properly rejected limitations in its application of the Medical Vocational Guidelines.

## CONCLUSION

The court has considered all of Plaintiff's arguments and finds that she has not carried her burden of demonstrating that the Commissioner's decision is not supported by substantial evidence or is based on legal error. Accordingly, the court finds no basis for setting aside the denial of benefits and will grant Defendant's motion for summary judgment.

Based on the foregoing, IT IS HEREBY ORDERED as follows:

1. Plaintiff's Motion for Summary Judgment is DENIED and Defendant's Motion for Summary Judgment is GRANTED, and
2. The Clerk shall close this case;

A separate judgment will issue.

**IT IS SO ORDERED**.

Dated: August 1, 2016

NANDOR J. VADAS
United States Magistrate Judge